UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:09-CV-397-H

PHARMERICA CORPORATION;                                        PLAINTIFFS
PHARMERICA LONG-TERM CARE, INC.;
PHARMERICA MOUNTAIN, INC.; AND
PHARMACY CORPORATION OF AMERICA

V.

ADVANCED HEALTHCARE SOLUTIONS, LLC;              DEFENDANTS
ANDREW S. LENICK;
MEDWISE GPO, INC.; AND
C. SCOTT RUSSELL

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' motion to dismiss for lack of personal jurisdiction. Defendants say that they do not have sufficient contacts with the forum state to allow this Court to exercise its jurisdiction. Defendants further move the Court to transfer venue should it find jurisdiction exists.

Because the Court finds that it lacks personal jurisdiction over Defendants, the Court dismisses the claim without prejudice. The Court need not consider the other motions.

I.

The jurisdictional facts of this case are quite simple. Plaintiffs are in the business of providing pharmaceuticals and other pharmacy and consulting services to institutional healthcare facilities. Plaintiffs are incorporated under the laws of Delaware and have their principle place of business in Kentucky. In the course of their business, Plaintiffs entered two contracts for pharmaceutical and consulting services that are important to this case. The first contract was with CRSA Management, LLC ("CRSA") to provide these services for a nursing home in

Bartlett, Illinois. The second contract was with The Village at Germantown, Inc. ("The Village"), another nursing home, which is located in Germantown, Tennessee.

Defendants are all in the business of pharmaceutical consulting. In essence, Defendants act as a middle man between the institutional healthcare facility and pharmacies such as Plaintiffs. Defendants negotiate a pricing schedule on behalf of the healthcare facility that is generally lower than the pricing schedule that comes directly from the pharmacy and Defendants receive fees for their services. Defendants do not provide actual pharmaceutical supplies.

Plaintiffs' claim is based on the allegation that Defendants tortiously interfered with their contracts with CRSA and The Village by convincing CRSA and The Village to terminate their agreements with Plaintiffs. According to Plaintiffs, these actions were taken so that Defendants could then negotiate new pricing schedules on behalf of CRSA and The Village.[1] Plaintiffs admit that none of the actions that caused them harm occurred in Kentucky. (Compl. ¶ 8.) In fact, the only connection to Kentucky claimed by Plaintiffs is that Defendants knew their actions would cause harm to a corporation that conducts business in Kentucky, namely Plaintiffs.

**II.**

"When determining whether there is personal jurisdiction over a defendant, a federal court must apply the law of the state in which it sits, subject to constitutional limitations." *Reynolds v. International Amateur Athletic Federation*, 23 F.3d 1110, 1115 (6th Cir. 1994). The Kentucky long arm statute reaches to the limit that the United States Constitution permits. *Tobin v. Astra Pharmaceutical Products, Inc.*, 993 F.2d 528, 542 (6th Cir. 1993). Therefore, the only

---

[1]Plaintiffs also allege that Defendants have attempted to get other healthcare facilities with similar agreements with Plaintiffs to terminate their agreements as well. However, Plaintiffs do not allege that these facilities took any actions. Therefore, the other facilities are not relevant to this case. This action only involves the agreements with CRSA and The Village.

question is whether exercising jurisdiction over Defendants would be consistent with the Constitution.

"The Due Process Clause of the Fourteenth Amendment to the United States Constitution permits personal jurisdiction over a defendant in any State with which the defendant has 'certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  To establish minimum contacts, the focus in on "the activities of the defendants out of which the suit arises." *Id.*  Plaintiffs must meet three distinct criteria to establish jurisdiction over Defendants: (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state[;]" (2) "the cause of action must arise from the defendant's activities" in the forum state; and (3) "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

### A.

The first issue in this case is whether Defendants "purposefully avail[ed themselves] of the privilege of acting in [Kentucky] or causing a consequence in [Kentucky]." *Id.*  To meet this prong, Plaintiffs rely on the "effects" test as promulgated by the Supreme Court in *Calder*.  There, the plaintiff was an actress who resided and worked in California.  She brought suit in California against the National Enquirer, a reporter for the National Enquirer and an editor for the National Enquirer, all of which resided in Florida.  The Court found that all of the defendants

3

were subject to suit in California because "their intentional conduct in Florida [was] calculated to cause injury to [the plaintiff] in California." *Calder*, 465 U.S. at 791. Plaintiffs argue the same is true in this case; Defendants committed tortious conduct outside of Kentucky that was aimed at causing injury in Kentucky. However, the Court finds that the facts of *Calder* are distinguishable from the present case.

     A key to the *Calder* decision was that the National Enquirer had its largest circulation in California. Such a circulation was an actual action that occurred in California. The reporter and the editor wrote an article aimed at a California resident only and used information in that article that they gathered from sources in California. *Id.* at 789-790. The Court found that California was the focal point of *both* the story *and* the harm. *Id.* at 788-789. In this case, on the other hand, Defendants actions all took place outside of Kentucky. Defendants aimed their actions at CRSA and The Village, Illinois and Tennessee corporations respectively. The focus of the actions in this case, therefore, was Illinois and Tennessee, not Kentucky. Put simply, nothing that is the basis of the allegations in this claim occurred in Kentucky.

     Plaintiffs place great emphasis on the Sixth Circuit case of *Scotts Co. v. Aventis S.A.*, No. 04-3569, 2005 WL 1869653 (6th Cir. Aug. 4, 2005). The Court finds that *Scotts* is also distinguishable from the present case. In *Scotts*, the plaintiff sued the defendant for tortious interference with a contractual relationship, much like Plaintiffs in this case. However, in *Scotts*, the defendants were actually the successors-in-interest to a contract that was negotiated in and signed in the forum state. Therefore, the defendants could be attributed with the behavior of the company they purchased, specifically the behavior of negotiating and entering the contract in the forum state. In the present case, there is no allegation that Defendants are in any way a

4

successor-in-interest to the contracts between Plaintiffs and the nursing homes. Moreover, Plaintiffs do not allege that the contracts were negotiated in or signed in Kentucky. Rather, it appears that Plaintiffs sought out business in Illinois and Tennessee. Such actions by Plaintiffs cannot be sufficient to subject Defendants to this Court's jurisdiction.

The present case more closely resembles the *Reynolds* case from the Sixth Circuit than *Calder* or *Scotts*. In *Reynolds* the plaintiff was an extremely successful track star. He competed in the 1988 Olympic games and hoped to compete in the 1992 Olympics. However, the defendant, an international unincorporated association based in England that was responsible for governing track events, conducted tests in 1990 and concluded that the plaintiff had taken a banned steroid. The defendant subsequently issued a press release to the same effect and banned the plaintiff from participating in international track events for two years. The plaintiff went through significant administrative appeals and put forth strong evidence that the defendant conducted the tests negligently and that the plaintiff was not using the banned steroids. Still, the defendant refused to allow the plaintiff to compete in international track activities. Subsequently, the plaintiff brought suit against the defendant for defamation and tortious interference with prospective business relationships. *Reynolds*, 23 F.3d at 1112-1113.

The Sixth Circuit analyzed personal jurisdiction for the tort claims under the same framework this Court has set forth. The plaintiff argued, and the District Court found, that "the injury to Reynolds was in Ohio [and] the [defendants] intentionally and purposefully directed their tortious acts toward Plaintiff" who was a resident of Ohio. *Id.* at 1117. The Sixth Circuit rejected this argument. The Sixth Circuit recognized that although the injury to the plaintiff was felt in Ohio, "[t]he question remains whether the [defendant], in making the alleged defamatory

5

statement in England, had minimum contacts with Ohio." *Id.* at 1119. As the *Reynolds* court held, "The fact that the IAAF could foresee that the report would be circulated and have an effect in Ohio is not, in itself, enough to create personal jurisdiction." *Id.* at 1120.

This case is analogous to *Reynolds*. Here, Defendants' actions, which all took place outside of Kentucky, were aimed at the nursing homes located outside of Kentucky. Defendants hoped that by their conduct they would secure a future contract with those nursing homes. The mere fact that Defendants could foresee that their actions would have an effect in Kentucky "is not, in itself, enough to create personal jurisdiction." *Id.* at 1120. In sum, nothing that Defendants did shows that they "purposefully avail[ed themselves] of the privilege of acting in [Kentucky] or causing a consequence in [Kentucky]." *Southern Mach. Co.*, 401 F.2d at 381.

**B.**

Even if the actions of Defendants were sufficient to establish "purposeful availment," Plaintiffs would still have to show that the cause of action arises from Defendants' activities in Kentucky. As explained, Defendants have taken *no* actions in Kentucky. Plaintiffs simply rehash their argument that because Defendants targeted contracts of nursing homes that involved a corporation Defendants knew had a principle place of business in Kentucky, Plaintiffs' cause of action arises from Defendants' actions in Kentucky. The Court finds that such an argument is not persuasive and that no actions relevant to these proceedings occurred in Kentucky. As such, the claim cannot have arisen from Defendants' activities in Kentucky.

**C.**

Finally, for this Court to hold jurisdiction over Defendants it would have to be reasonable. While this prong of the jurisdictional test may be the least precise, the Court finds

that holding jurisdiction over Defendants would be unreasonable. To find jurisdiction in this case would mean that Kentucky courts could reasonably assert jurisdiction over any defendant who caused an injury to a corporation that the defendant knew would be harmed in Kentucky. In essence, a plaintiff would almost never have to leave its home state to try a case, even if the alleged defendant had never stepped foot in that state or transacted any business with that state. That is simply too broad of an application of personal jurisdiction to be consistent with the Due Process Clause.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion to dismiss for lack of personal jurisdiction is SUSTAINED and Plaintiffs' claims are DISMISSED WITHOUT PREJUDICE. Defendants' motions to transfer venue and dismiss for failure to state a claim are moot.

This is a FINAL order.

cc: Counsel of Record